UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                              )
JASON BOUDREAU,               )
                              )
          Plaintiff,          )
                              )
     v.                       )    C.A. No. 17-090 WES
                              )
STEVE LUSSIER; JOHN LUSSIER;  )
STEVE SOREL; DOUGLAS GIRON;   )
JESSICA PAPAZIAN-ROSS; AND SHECTMAN)
HALPERIN SAVAGE, LLP,         )
                              )
          Defendants.         )
_____)
```

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, Chief Judge.

Magistrate Judge Lincoln D. Almond filed a Report and Recommendation ("R&R") (ECF No. 83), in which he recommends that the Court grant both Motions for Summary Judgment (ECF Nos. 35, 41) filed by Defendants. Plaintiff Jason Boudreau ("Plaintiff" or "Boudreau") filed a timely Objection[1] to the R&R ("Objection") (ECF No. 86). After careful consideration, the Court ACCEPTS the R&R and GRANTS Defendants' Motions for Summary Judgment.

I. The ATC Defendants

Defendants Steve Lussier, John Lussier, and Steve Sorel

---

[1] The Court reviews de novo a properly objected-to R&R addressing a dispositive motion. See Emissive Energy Corp. v. SPA-Simrad, Inc., 788 F. Supp. 2d 40, 42 (D.R.I. 2011); Fed. R. Civ. P. 72(b)(3).

(collectively "ATC Defendants") filed a Motion for Summary Judgment
(ECF No. 35), arguing that res judicata bars Boudreau's claim.  In
his Objection, Boudreau claims "[t]he Magistrate erred . . . on the
issue of res judicata applying to the instant case."  (Obj. 21.)
Boudreau avers that every use of the intercepted communications after
the start of the 2013 litigation "can be separate causes of action
under the [Rhode Island Wiretap Act ("RIWA")] and the Federal Wiretap
Act."  (Id. at 13.)  He further contends that, because res judicata
does not bar his claim, and no exception to the RIWA applies,
Defendants maintain liability.  (See id. at 21.)  Moreover, he argues
that Magistrate Judge Almond "erred in finding the use and disclosure
was permitted under the RIWA" and in "fail[ing] to acknowledge the
plaintiff's privacy concerns."  (Id. at 28, 31.)

    Plaintiff's arguments – each of which he set forth in his
original Response to the Motion for Summary Judgment (ECF No. 54) –
are no more persuasive at this stage.  Nevertheless, the Court
undertakes a de novo review.

    The doctrine of res judicata requires three elements:  "(1) a
final judgment on the merits in an earlier action; (2) an identity
of parties or privies in the two suits; and (3) an identity of the
cause of action in both the earlier and later suits."  Aunyx Corp.
v. Canon U.S.A., Inc., 978 F.2d 3, 6 (1st Cir. 1992).  Here, there
is both a final judgment on the merits and an identity of parties.
See Boudreau v. Lussier, No. 13-388 S, 2015 WL 7720503, at *1, *7

(D.R.I. Nov. 30, 2015). Judge Almond correctly noted that the addition of new defendants does not vitiate res judicata. See Manego v. Orleans Bd. of Trade, 598 F. Supp. 231, 235 (D. Mass. 1984), aff'd, 773 F.2d 1 (1st Cir. 1985), cert. denied, 475 U.S. 1084 (1986).

Finally, the transactional test governs the third prong, which Judge Almond properly applied. See Manego, 773 F.2d at 5. The First Circuit has noted that "it necessarily follows that a particular legal theory not pressed in the original suit will nonetheless be precluded in the subsequent one if it prescinds from the same set of operative facts." Kale v. Combined Ins., 924 F.2d 1161, 1166 (1st Cir. 1991). Indeed, the case at hand turns on the same set of facts as its previous iteration: the alleged interception which occurred in 2011. For all the other reasons Judge Almond noted, these two suits are sufficiently related that the former precludes the latter. Therefore, the Court adopts Judge Almond's reasoning and grants the Motion for Summary Judgment (ECF No. 35) as to the ATC Defendants.

II. The SHS Defendants

Defendants Douglas Giron, Jessica Papazian-Ross, and Shectman Halperin Savage, LLP (collectively "SHS Defendants") filed a Motion for Summary Judgment (ECF No. 41), arguing that the litigation privilege bars Boudreau's claim. Boudreau faults Magistrate Judge Almond for "holding that a 'litigation privilege' provides blanket immunity to the Defendants [sic] use and disclosure of intercepted

communications during judicial proceedings." (Obj. 1-2.) Specifically, he contends that Magistrate Judge Almond "did not cite any Rhode Island case law that held that a 'litigation privilege' trumps the . . . RIWA . . . nor . . . any case law from any jurisdiction that held that a 'litigation privilege' trumped either a [s]tate wiretap [a]ct or the Federal Wiretap Act." (Id. at 2.)

Although Plaintiff is correct that Magistrate Judge Almond did not cite any Rhode Island case that held that the litigation privilege trumps the RIWA, that's because there is no such case. As a matter of first impression in Rhode Island, the Court looks to other jurisdictions to inform its holding.

Plaintiff advances several cases to support his argument, none of which proves persuasive. He relies primarily on Babb v. Eagleton, 616 F. Supp. 2d 1195 (N.D. Okla. 2007), and Pyankovska v. Abid, No. 2:16-CV-2942 JCM (PAL), 2017 WL 5505037 (D. Nev. Nov. 16, 2017). These cases involved violations of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520, otherwise known as the Federal Wiretap Act, and both courts held that the litigation privilege did not trump the Act. The courts in both cases, however, went to great lengths to emphasize that the litigation privilege has no bearing on federal claims. See Pyankovska, 2017 WL 5505037, at *4; Babb, 616 F. Supp. 2d at 1207. Those courts, in fact, distinguished Title III liability from state wiretap law liability. Pyankovska, 2017 WL 5505037, at *4 ("The

4

court [in Babb] based its holding [in part] on . . . cases applying

the litigation privilege applied it to state law claims, not federal

claims . . . ."); Babb, 616 F. Supp. 2d at 1207 ("[C]ourts applied

the litigation privilege as a defense to claims arising solely under

state law." (emphasis added)).  Because the instant case involves a

violation of the RIWA, these cases are inapposite.

Additionally, Plaintiff's reliance on Nix v. O'Malley, 160 F.3d

343 (6th Cir. 1998), is misplaced.  While Nix deals with violations

of Title III and the relevant Ohio wiretap statute, that court was

partially persuaded because the attorney disclosed information

unrelated to his or her client's defense.  See id. at 352-53.  Here,

and in the 2013 litigation, the action hinged on the ATC Defendants'

alleged unlawful interception and disclosure of the screenshots.

Therefore, the screenshots themselves certainly related to the

proceedings, and Nix is not on point.

Other jurisdictions also inform this Court's analysis.  In Rich

v. Rich, the Superior Court of Massachusetts held that "the absolute

privilege applies to . . . the Wiretap Act."  No. BRCV200701538,

2011 WL 3672059, at *8 (Mass. Super. Ct. July 8, 2011).  That court

described the Massachusetts litigation privilege as follows:

"written or oral communications made by a party, witness, or attorney

prior to, in the institution of, or during and as part of a judicial

proceeding involving said party, witness, or attorney are absolutely

privileged even if uttered maliciously or in bad faith."  Id.  Rhode

Island's litigation privilege is similarly sweeping. <u>See</u> <u>Kissell v.</u>
<u>Dunn</u>, 793 F. Supp. 389, 392 (D.R.I. 1992) ("[L]ibelous matter in
pleadings filed in judicial proceedings are absolutely privileged
where the statements are material, pertinent or relevant to the
issues thereon." (quoting <u>Vieira v. Meredith</u>, 123 A.2d 743, 744 (R.I.
1956))); <u>Francis v. Gallo</u>, 59 A.3d 69, 71 (R.I. 2013) ("[S]tatements
made in judicial proceedings are privileged, and thus cannot form
the basis for a defamation claim." (quoting <u>W. Mass. Blasting Corp.</u>
<u>v. Metro. Prop. & Cas. Ins</u>., 783 A.2d 398, 403 n.3 (R.I. 2001))).

Moreover, the policy reasons that underscore the Superior Court
of Massachusetts' reasoning also persuade this Court. <u>See</u> <u>Rich</u>,
2011 WL 3672059, at *8 ("A privilege which protected an individual
from liability for defamation would be of little value if the
individual were subject to liability under a different theory of
tort." (quoting <u>Correllas v. Viveiros</u>, 572 N.E.2d 7, 13 (Mass.
1991))). Indeed, an attorney must be allowed "complete freedom of
expression and candor in communications in their efforts to secure
justice for their clients." <u>Mack v. Wells Fargo Bank, N.A.</u>, 41
N.E.3d 323, 327 (Mass. App. Ct. 2015) (quoting <u>Sriberg v. Raymond</u>,
345 N.E.2d 882, 883 (Mass. 1976) (quotation marks omitted).
According to the Restatement of Torts, Second, the absolute privilege
applicable in defamation cases applies "to the publication of any
matter that is an invasion of privacy." Restatement (Second) Torts
§ 652F (1977). Therefore, the Court is satisfied that the litigation

privilege also applies in the context of the RIWA.

For the above reasons, and because Magistrate Judge Almond correctly applied the litigation privilege,[2] this Court ACCEPTS the R&R (ECF No. 83) and adopts its reasoning and recommendations. Defendants' Motions for Summary Judgment (ECF Nos. 35, 41) are GRANTED.

IT IS SO ORDERED.

_William E. Smith_
William E. Smith
Chief Judge
Date:  July 30, 2018

---

[2]  In any event, even though the Court accepts Magistrate Judge Almond's recommendations on this reasoning, Defendants' Motions could also be granted under the doctrine of collateral estoppel.  To violate the RIWA requires a communication that is unlawfully obtained.  See R.I. Gen. Laws § 12-5.1-13.  In the 2013 litigation, however, the Court deemed the search of the computer lawful.  See Boudreau, 2015 WL 7720503, at *4 ("[T]here [was] uncontroverted evidence that the owner of Plaintiff's work computer gave Det. Petit permission to search it.  Thus, the search did not violate the Fourth Amendment.") (internal citations omitted).  Accordingly, collateral estoppel also dooms Plaintiff's arguments on this score.

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JASON BOUDREAU          :
          :
v.          :     C.A. No. 17-00090-WES
          :
STEVE LUSSIER, et al.          :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

Pending before the Court are Defendants' Motions for Summary Judgment filed pursuant to Fed. R. Civ. P. 56. (ECF Doc. Nos. 35 and 41). Plaintiff Jason Boudreau filed Objections. (ECF Doc. Nos. 54 and 62). This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72(a). After reviewing the Memoranda submitted and relevant case law, I recommend that the Motions for Summary Judgment (ECF Doc. Nos. 35 and 41) be GRANTED.

      **Background**

Plaintiff brings two claims in this suit: a claim under the Rhode Island Wiretap Act, R.I. Gen. Laws § 12-5.1-13 ("RIWA") and a claim of invasion of privacy under R.I. Gen. Laws § 9-1-28.1. The claims presented are based upon events familiar to this Court, as the underlying facts also formed the basis for Plaintiff's 2013 federal court action, C.A. No. 13-00388-WES-LDA ("the 2013 Action"). The facts are set forth in more detail below, and they center upon "screenshots" taken from Plaintiff's work computer which depicted illegal child pornography. The 2013 Action alleged constitutional violations, violations of the Electronics Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510 and violations of 42 U.S.C. § 1983. That case

concluded when Chief Judge William E. Smith entered judgment in favor of all Defendants on November 30, 2015.  An appeal of that final judgment is pending.

Plaintiff now asserts that the very same factual predicates which formed the basis of the 2013 Action also give rise to the two state law claims.  He argues that "new" or additional violations of those state laws occurred in connection with the 2013 Action, through the use and disclosure of the screenshots to the police, the use of the screenshots in deposition testimony and the submission of the screenshots to the Court as Exhibits.   In the present suit, Plaintiff's claims are brought against two distinct groups of Defendants:  (1) the "ATC Defendants," a group comprised of employees of Plaintiff's former employer, Automatic Temperature Controls, Inc. ("ATC"): Steve Lussier, John Lussier and Steve Sorel; and (2) the "SHS Defendants," a group of Defendants comprised of Attorney Douglas Giron, Attorney Jessica Papazian-Ross and the Law Firm of Shectman Halperin and Savage, LLP.   The ATC Defendants were named Defendants in the 2013 Action, and the SHS Defendants were the attorneys and their Law Firm that represented the ATC Defendants in that action.   The two Defendant groups have separately moved for Summary Judgment.

### Facts

 Defendants submitted their Statements of Undisputed Facts, as required under Local Rule, and those Statements contained identical recitations of the Facts. (ECF Doc. Nos. 36 and 42). Plaintiff Objected.   The Court will hereinafter refer to the ATC Defendants' Statement of Facts. Plaintiff was an employee of ATC from September 2009 until June 24, 2011. (ECF Doc. No. 36 at ¶ 1).   Steve Sorel, during Plaintiff's employment at ATC, was employed by ATC as Information Technology Manager. Id. at ¶ 2. Steve and John Lussier are shareholders of ATC.  Id. at ¶ 3. Plaintiff was provided a company-owned computer (the "Computer") to use in connection with his

employment, which was equipped with a Hitachi-Saturn 500 Gigabyte hard drive (the "Hard Drive"). Id. at ¶ 4. The Computer was a Dell Precision T1500 Desktop, serial number 9NS7FP1. Id. at ¶ 5. Sometime in June 2011, the operating system on the Computer crashed, and Plaintiff asked Steve Sorel to restore some of his emails that were inadvertently deleted. Id. at ¶ 6. In an attempt to recover Plaintiff's emails, Steve Sorel installed Recuva file-recovery software on the Computer, which produced a list of "recoverable" files that were previously deleted from the Computer. Id. at ¶ 7. In reviewing the list of recoverable files, Steve Sorel found that many files were pornographic videos and pictures and reported the pornographic files to Steve Lussier. Id. at ¶ 8. Steve Lussier requested that Steve Sorel install tracking software on the Computer due to his concern that Plaintiff was conducting illegal activity on the Computer. Id. at ¶ 9.

On or about June 16, 2011, Steve Sorel installed System Surveillance Pro ("SSP") on the Computer, which was software that captured intermittent "screenshots" of computer activity and saved such screenshots to the hard drive of the Computer (in a folder located at c:\windows\fontapp), and sent them to an email account established at test123@autotempscontrols.com ("test123 email"). Id. at ¶ 10. The test123 email service was hosted by Bluehost. Id. at ¶ 11. On or about June 23, 2011, Steve Sorel logged onto the test123 email account to review the screenshots of the Computer's activity. One screenshot indicated that a flash drive was inserted into the Computer, and others displayed the contents of the flash drive, which appeared to be pictures of naked young girls in a folder named "Hiren's Hutchings." Id. at ¶ 12. At the request of management, Steve Sorel downloaded the screenshots to a flash drive so that the screenshots could be delivered to the police. Id. at ¶ 13. On or about June 23, 2011, Steve Lussier and Steve Sorel brought the flash drive to the Warwick Police Department and delivered it to Detective Kevin Petit ("Detective Petit"), who is also a member of the Rhode Island

State Police Computer Crime Unit/Internet Crimes Against Children Task Force. <u>Id.</u> at ¶ 14. Detective Petit asked Steve Lussier to bring the Computer into the police station for analysis. <u>Id.</u> at ¶ 15. On or about June 24, 2011, John Lussier and Steve Sorel brought the Computer to Detective Petit at the Rhode Island State Police ("RISP"), Scituate barracks, for analysis. <u>Id.</u> at ¶ 16. Later, on or about June 24, 2011, Plaintiff was arrested in ATC's parking lot and charged with driving with a suspended license by the Cranston Police Department. <u>Id.</u> at ¶ 17. On or about June 24, 2011, ATC terminated Plaintiff's employment. <u>Id.</u> at ¶ 18.

On or about July 20, 2011, Plaintiff was arrested on charges of possession of child pornography (the "Child Pornography Charges"). <u>Id.</u> at ¶ 19. In connection with the Child Pornography Charges, Detective Petit conducted a Computer Forensics Preliminary Report, which summarized his review of the hard drive in the Computer. His examination revealed that an external hard drive was utilized to view approximately seventeen photographs of child pornography in a file called "Hiren's 13.0 Hutchings." <u>Id.</u> at ¶ 20. In connection with his termination from ATC, Plaintiff filed for unemployment benefits, which ATC contested. <u>Id.</u> at ¶ 21. At an unemployment hearing held on January 24, 2012, Steve Lussier stated to the Hearing Officer that SSP was installed on the Computer, and that several screenshots were taken of the Computer's activity. He further explained that upon reviewing the screenshots, it was apparent that their contents were illegal. <u>Id.</u> at ¶ 21.

On March 28, 2013, Plaintiff filed the 2013 Action against Steve Lussier, John Lussier, Steve Sorel and Detective Petit, alleging that they violated provisions of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510, et seq. <u>See</u> <u>Boudreau v. Lussier, et al.</u>, 13-CV-00388-WES-LDA (May 28, 2013), ECF Doc. No. 1. <u>Id.</u> at ¶ 22. Due to duplicative filings in another case, Plaintiff amended his Complaint in the 2013 Action to further assert civil rights

claims against additional parties.  See Boudreau v. Lussier, et al., 13-CV-00388-WES-LDA (Aug. 28, 2013), ECF Doc. No. 8.  Id. at ¶ 23.

During discovery of the 2013 Action, Brittnee Morgan, a computer forensic examiner for the Rhode Island State Police Computer Crimes Unit, prepared a Computer Forensics Examination Report (the "Morgan Report") on October 2, 2013, which analyzed the hard drive on the Computer and several screenshots.  Id. at ¶ 24.  From the screenshots reviewed, Ms. Morgan found that the hard drive contained twelve images of child pornography, which originated from a USB drive inserted into the Computer.  Id. at ¶ 25.  On or about January 2, 2014, Plaintiff pled nolo contendere in Rhode Island Superior Court to the Child Pornography Charges. See Judgment of Conviction and Commitment, Case No: P2-2012-0841A.  Id. at ¶ 26.  The screenshots of the Computer were included in the Morgan Report, which was provided to Plaintiff in or about May, 2014 as a part of the expert witness disclosures required under the Rules of Civil Procedure.  Id. at ¶ 27.  Also during discovery, on June 6, 2014, Jessica Papazian-Ross, an attorney for ATC Defendants, deposed Plaintiff.  During the deposition, Attorney Papazian-Ross referenced the Morgan Report and the screenshots included therein.  Id. at ¶ 28.  On April 29, 2014, Plaintiff deposed Steve Lussier, and in response to questions by Plaintiff, Steve Lussier described the contents of several screenshots that he saw.  Id. at ¶ 29.

On August 14, 2014, the ATC Defendants filed a Motion for Summary Judgment, arguing that, as a matter of law, Plaintiff was unable to sustain his causes of action under the ECPA because he could not prove that the screenshots were illegally obtained.  See Boudreau v. Lussier, et al., 13-CV-00388-WES-LDA (D.R.I. Aug. 15, 2014), (ECF Doc. Nos. 162-164).  Id. at ¶ 30. Included as Exhibits to the Motion for Summary Judgment, were (1) an Affidavit of Ms. Morgan, which was accompanied by the Morgan Report; and (2) an Affidavit of Steve Sorel, in which he

indicated that he installed SSP on the Computer, that SSP takes screenshots of the Computer's activity, and that SSP saved the screenshots to the hard drive of the Computer and sent them to the test123 email.  Boudreau v. Lussier, et al., 13-CV-00388-WES-LDA (D.R.I. Aug. 15, 2014), (ECF Doc. Nos. 164-2, 164-10).  Id. at ¶ 31.

While the Motion for Summary Judgment was pending, Plaintiff filed two Motions to which the ATC Defendants objected on September 2, 2017 and September 24, 2017, respectively, each of which contained screenshots of Plaintiff's computer activity.  See Compl. at ¶ 57; Boudreau v. Lussier, et al., 13-CV-00388-WES-LDA, ECF Doc. No. 192-2; 207-1.  Id. at ¶ 32. In a Report and Recommendation, dated June 2, 2015, this Court recommended that the Motion for Summary Judgment be granted as to Counts I and II of the Complaint, but denied as to Count IV, which constituted Plaintiff's claims under the ECPA.  See Boudreau v. Lussier, et al., 13-CV-00388-WES-LDA (June 2, 2015), ECF Doc. No. 230.  Id. at ¶ 33.  The ATC Defendants objected to the Report and Recommendation, contending that the Court "misallocated to the ATC Defendants the burden of proving that no 'interception had occurred.'"  See Boudreau v. Lussier, et al., 13-CV-00388-WES-LDA (June 15, 2015), ECF Doc. No. 233-1 at pp. 6-7.  The ATC Defendants asserted that because "Plaintiff did not retain an expert witness" and could not at the time (as the deadline for expert witnesses had passed), Plaintiff could not meet his burden in proving a violation of the ECPA.  See Boudreau v. Lussier, et al., 13-CV-00388-WES-LDA (June 15, 2015), ECF Doc. No. 233-1 at p. 7.  Id. at ¶ 34.

On November 30, 2015, Chief Judge William E. Smith conducted a de novo review of the Motions for Summary Judgment and adopted the Report and Recommendation as to Counts I and II, but rejected the Report and Recommendation as to Count IV (the ECPA claim), ultimately granting summary judgment in favor of the ATC Defendants on Count IV.  See Boudreau v.

<u>Lussier</u>, 2015 U.S. Dist. LEXIS 160078, *23 (D.R.I. Nov. 30, 2015).  <u>Id.</u> at ¶ 35.   In granting summary judgment for the ATC Defendants on Count IV, Chief Judge William E. Smith held that because Plaintiff did not retain an expert – in a case where an expert is necessary – he could not prove, as a matter of law, that the screenshots were "intercepted" and obtained in violation of the ECPA. <u>See</u> <u>Boudreau v. Lussier,</u> 2015 U.S. Dist. LEXIS 160078, **22-23 (D.R.I. Nov. 30, 2015). <u>Id.</u> at ¶ 36.   Specifically, the Court held that "without an expert, Plaintiff will have no way to demonstrate when the screenshots were taken in relation to the transmission of his emails, and the jury would have no basis to find that they were taken at the same time."   <u>See</u> <u>Boudreau v. Lussier</u>, 2015 U.S. Dist. LEXIS 160078, **22-23 (D.R.I. Nov. 30, 2015).   <u>Id.</u> at ¶ 37.   Accordingly, the Court granted summary judgment as to all counts in favor of the ATC Defendants and entered judgment on November 30, 2015.   <u>See</u> <u>Boudreau v. Lussier, et al.,</u> 13-CV-00388-WES-LDA (Nov. 30, 2015), ECF Doc. No. 255. Plaintiff subsequently appealed.   <u>See</u> <u>Boudreau v. Lussier, et al.,</u> 13-CV-00388-WES-LDA (Dec. 30, 2015), ECF Doc. No. 256.   <u>Id.</u> at ¶ 38.

Thereafter, on December 20, 2016, Plaintiff initiated the instant suit by filing a Complaint in the Rhode Island Superior Court alleging that Defendants violated the Rhode Island Wiretap Act ("RIWA"), R.I. Gen. Laws § 12-5.1-13 and invaded Plaintiff's privacy under R.I. Gen. Laws § 9-1-28.1.   On March 6, 2017, the SHS Defendants removed the action to this Court, asserting that the instant dispute presented embedded federal questions as to the use of the screenshots in defending a federal statutory claim in Federal Court.   <u>Id.</u> at ¶ 39.

**Summary Judgment Standard**

A party shall be entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law." Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, the Court must review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. Cadle Co. v. Hayes, 116 F.3d 957, 959 (1st Cir. 1997).

Summary judgment involves shifting burdens between the moving and the nonmoving parties. Initially, the burden requires the moving party to aver "an absence of evidence to support the nonmoving party's case." Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). Once the moving party meets this burden, the burden falls upon the nonmoving party, who must oppose the motion by presenting facts that show a genuine "trialworthy issue remains." Cadle, 116 F.3d at 960 (citing Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995); Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994)). An issue of fact is "genuine" if it "may reasonably be resolved in favor of either party." Id. (citing Maldonado-Denis, 23 F.3d at 581).

To oppose the motion successfully, the nonmoving party must present affirmative evidence to rebut the motion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-257 (1986). "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, [or] unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Moreover, the "evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve." Id. (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)). Therefore, to defeat a properly supported motion for summary judgment, the nonmoving party must establish a trialworthy issue by presenting "enough

competent evidence to enable a finding favorable to the nonmoving party." Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993) (citing Anderson, 477 U.S. at 249).

**Discussion – The ATC Defendants**

The ATC Defendants claim they are entitled to judgment for three reasons: (1) claim preclusion/res judicata; (2) issue preclusion/collateral estoppel; and (3) failure on the merits under the statutes. The first, and most compelling, argument set forth by the ATC Defendants is their assertion that the claims set forth in this suit are barred by res judicata because they could have been, but were not, included in the 2013 Action. Federal law governs the res judicata effects of a Federal Court judgment where both the precluding and potentially precluded suit are litigated in Federal Court. See Gonzalez v. Banco Cent. Corp., 27 F.3d 751, 755 (1st Cir. 1994). "The accepted formulation of res judicata for federal court use teaches that 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" Gonzalez, 27 F.3d at 755 quoting Allen v. McCurry, 449 U.S. 90, 94 (1980). "The doctrine of res judicata, 'encourages a plaintiff to mount in a single action its claims against the party which it has haled into court.'" Velikonja v. Ashcroft, 355 F. Supp. 2d 197, 200 (D.D.C. 2005) quoting U.S. Indus. v. Blake Constr. Co., 765 F.2d 195, 209 (D.C. Cir.1985) (internal citation omitted). "It acts to 'conserve judicial resources, avoid inconsistent results, engender respect for judgments of predictable and certain effect, and to prevent serial forum-shopping and piecemeal litigation.'" Id. quoting Hardison v. Alexander, 655 F.2d 1281, 1288 (D.C. Cir.1981).

The elements of res judicata are: "(1) a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both the earlier and later suits; and (3) an identity of parties or

privies in the two suits." <u>Kale v. Combined Ins. Co. of Am.</u>, 924 F.2d 1161, 1165 (1ˢᵗ Cir. 1991). The Court considers each of the three prongs of the test.

First, the ATC Defendants note that the 2013 Action ended with a Final Judgment on the merits when Chief Judge William E. Smith concluded that Plaintiff failed to meet his burden of proving that the screenshots were unlawfully intercepted under the ECPA. (<u>See</u> ECF Doc. No. 35-1 at p. 10). The merits of Plaintiff's claims were considered in the Order, and the Court entered Final Judgment in the Action after issuing the Order. Accordingly, the Court concludes that the 2013 Action ended with a Final Judgment on the merits for purposes of res judicata.

The next question is whether there is sufficient "identity" of the parties between the 2013 Action and this case. All three of the ATC Defendants were named Defendants in the 2013 Action. In the present case, there is a second group of Defendants that were not Defendants to the 2013 Action. The Court is presently considering solely the ATC Defendants' Motion for Summary Judgment asserting res judicata. "[T]he addition of new Defendants in a subsequent action does not affect the preclusive affect of the judgment as to the original parties." <u>Manego v. Orleans Bd. of Trade</u>, 598 F. Supp. 231, 235 (D. Mass. 1984). As a result, the Court finds this prong of the res judicata test to be satisfied as to the ATC Defendants.

Finally, the ATC Defendants urge this Court to find an identity of "causes of actions" between the two suits by applying the "transactional test" which instructs the Court to consider whether the new state law claims derive from the same common nucleus of facts as the federal claims brought in the previous suit. This final prong of the res judicata analysis requires careful deliberation, and thorough consideration of Plaintiff's numerous arguments in opposition.

As a starting point to the analysis, the ATC Defendants argue that there is a sufficient identity of the causes of actions because both lawsuits concern Plaintiff's allegations that "the

ATC Defendants allegedly installed SSP on the Computer, unlawfully intercepted Plaintiff's communications, and disclosed the contents of those communications." (ECF Doc. No. 35-1 at p. 13). In Kale, the First Circuit Court of Appeals held that

> [a] single cause of action can manifest itself in an outpouring of different claims, based variously on federal statutes, state statutes, and the common law. Yet, such heterogeneity alone does not work an exception to the rule of preclusion. So long as different theories of recovery, howsoever prolific, derive from the same cause of action, the requisite identity is achieved if, and to the extent that, all such theories concern the same operative nucleus of fact.

Kale, 924 F.2d 1161, 1166 (1st Cir. 1991) (internal quotations and citations omitted). Following this reasoning, the ATC Defendants assert that the state law claims derive from the same operative facts and must have been brought, if it all, in the 2013 Action.

Plaintiff responds to the ATC Defendants' arguments by noting that the facts that form the basis of this lawsuit include actions taken after the filing of the 2013 Action, therefore he claims res judicata does not bar these claims because they did not exist at the inception of the 2013 Action. Relatedly, Plaintiff argues that there cannot be any judgment on the merits for the claims that arose from Defendants' actions in 2014 and 2015. Plaintiff also argues that the two cases will not involve the same evidence, and the statutes at issue have different elements and burdens of proof.

The Court first considers Plaintiff's claim that the facts at issue in the present case could not have been included in the 2013 Action because they occurred after that suit was filed. Here, Plaintiff contends that the disclosures that occurred while the 2013 Action was pending were "new offenses" that violated the RIWA and Plaintiff's state law privacy rights and are subject to individual consideration. See e.g., ECF Doc. No. 54 at pp. 23-27, 31-32. He cites Minarik Elec. Co. v. Electro Sales Co., 223 F.Supp. 2d 334 (D. Mass. 2002) (internal quotations omitted) in support of his contention. The Minarik Court noted that "[e]ven when two suits concern

essentially the same course of wrongful conduct, the first suit cannot be seen as precluding claims which did not even then exist and which could not possibly have been sued upon in the previous case." Id. at 338. (citations omitted). Despite language that, at first blush, supports his claim, the Minarik case contains significant differences from the present case. First, the Minarik Court noted that "the two parties from a previous suit have [had] continued contact following the judgment in that suit." Id. at 340. In this case, there has not been contact following judgment that is alleged to give rise to new claims; instead, all of the factual predicates to the claims in this case occurred before the 2013 Action reached Final Judgment. Second, the Minarik Court declined to apply res judicata to the second lawsuit after noting that there was a "meaningful" change in the "legal relationship between the parties" as well as a "significant change of fact" and a "substantial change in the legal climate" Id. at 340-341. In this case, there have been no significant changes to the parties' relationship, to the legal climate and there have been no new or additional facts presented. The so-called "new" facts all occurred while the 2013 Action was pending. Accordingly, the Minarik decision is factually distinct and does not guide the Court's decision-making.

The First Circuit guideposts for considering the transactional component of the res judicata analysis include "whether the facts are related in time, space, origin or motivation," "whether they form a convenient trial unit," and "whether their treatment as a unit conforms to the parties' expectations." Iannochino v. Rodolakis, 242 F.3d 36, 46 (1st Cir. 2001). In the present case, the facts are indisputably the same as those contained within the 2013 Action. The 2013 Action alleged that Plaintiff's electronic communications were unlawfully intercepted and disclosed by the ATC Defendants. The present action alleged that those same intercepted communications were unlawfully disclosed and used by the ATC Defendants. It is undisputed that the allegedly

unlawful "interception" occurred during a several-day period in June of 2011 and that the same "intercepted communications" are at issue in both the 2013 and 2017 cases. Both cases allege unlawful use or disclosure of these same communications.

In the 2013 action, Plaintiff asserted that the ATC Defendants "intentionally and willfully disclose[d] the contents of the unlawfully intercepted electronic communications" and sought both compensatory damages as well as "appropriate declaratory and statutory relief regarding the unlawful interception and disclosure of electronic communications…." (ECF Doc. No. 8 at pp. 20 and 24 in C.A. No. 13-00388-WES-LDA). The present action also seeks compensatory damages and injunctive relief related to the use or disclosure of these same electronic communications for the period "April 2014 to June 2015." (ECF Doc. No. 1-1). Plaintiff limits the present action to a time period which predates by several months Chief Judge Smith's grant of summary judgment and entry of Final Judgment in the 2013 Action. Plaintiff was plainly alleging unlawful disclosure in the 2013 Action and was contemporaneously aware of the April 2014 to June 2015 disclosures at issue in this case since they occurred openly in the course of discovery and motion practice in the 2013 Action. Thus, they form a convenient trial unit and the RIWA and state privacy actions could have been asserted in the 2013 Action.

With respect to those claims Plaintiff alleges occurred while the 2013 Action was pending, "[g]iven the discovery and amendment provisions of the Federal Rules of Civil Procedure, plaintiff certainly could have obtained the necessary evidence to litigate his alternate theory in the first proceeding." Manego v. Orleans Bd. of Trade, 598 F. Supp. 231, 235 (D. Mass. 1984), aff'd, 773 F.2d 1 (1st Cir. 1985). As a general matter, when a second-filed action concerns a transaction occurring after the commencement of the first-filed action, there is no claim preclusion. See S.E.C. v. First Jersey Sec., Inc., 101 F.3d 1450, 1464 (2nd Cir. 1996). While a plaintiff may seek

leave to file a supplemental pleading in the first-filed action to assert a claim based on such transaction, he is not generally required to do so. See Computer Assocs. Int'l, Inc. v. Altai, Inc., 126 F.3d 365, 369-370 (2nd Cir. 1997). While these principles are unremarkable on their face, their application is more complicated, particularly when layered with the "transactional" approach to determining whether there is an identity of claims. See Storey v. Cello Holdings, LLC., 347 F.3d 370 (2nd Cir. 2003). "Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were presented in the first." N.L.R.B. v. United Tech. Corp., 706 F.2d 1254, 1260 (2nd Cir. 1983). "Under the transactional test, a new action will be permitted only where it raises new and independent claims, not part of the previous transaction, based on the new facts." Hatch v. Boulder Town Council, 471 F.3d 1142, 1150 (10th Cir. 2006). (emphasis omitted).

Applying the transactional test to this case, it is apparent that there is sufficient identity of facts and legal issues between the 2013 and 2017 cases to warrant claim preclusion. Both cases involve the same challenged "interception" occurring in 2011 and the same "intercepted" electronic communications. Both cases contain legal claims of unlawful disclosure of these same communications, and, finally, the "new" facts underlying the 2017 case took place in the course of and prior to the entry of Judgment in the 2013 Action. When boiled down, the current suit is yet another iteration of the 2013 Action, and the circumstances of these cases falls squarely into the purpose of the res judicata doctrine, i.e., preventing a party from bringing the same case multiple times. See Koolen v. Mortg. Elec. Registration Sys., Inc., 953 F. Supp. 2d 348, 351 (D.R.I. 2013) citing Caballero–Rivera v. Chase Manhattan Bank, N.A., 276 F.3d 85, 86 (1st Cir. 2002) (noting

that res judicata "promotes the goals of fairness and efficiency by preventing vexatious or repetitive litigation.").

Because all of the elements of res judicata are satisfied here, Plaintiff does not state an actionable claim against any of the ATC Defendants, and the Court need not consider the alternate arguments set forth by the ATC Defendants.   I therefore recommend that the ATC Defendants' Motion for Summary Judgment be GRANTED on <u>res judicata</u> grounds.

### Discussion – The SHS Defendants

Plaintiff's claims against the SHS Defendants relate to their disclosure of the screenshots during depositions and in Court pleadings while they served as counsel to the ATC Defendants in the 2013 Action.   The SHS Defendants argue that they are entitled to judgment on the claims pursued by Plaintiff because the claims are based upon actions they undertook in representation of the ATC Defendants in the 2013 Action and are thus protected by the "litigation privilege."

In brief, the litigation privilege "protects statements made in the institution or conduct of litigation or in conferences and other communications preliminary to litigation."   <u>Encompass Ins. Co. of MA v. Giampa</u>, 522 F.Supp.2d 300, 308 (D. Mass. 2007) (quotations omitted).   The litigation privilege initially emerged to insulate attorneys from defamation claims based on statements they made during litigation.   Rhode Island has recognized, for example, that "libelous matter in pleadings filed in judicial proceedings are absolutely privileged where the statements are material, pertinent or relevant to the issues thereon...." <u>Kissell v. Dunn</u>, 793 F. Supp. 389, 392 (D.R.I. 1992) <u>quoting</u> <u>Vieira v. Meredith</u>, 123 A.2d 743, 744 (R.I. 1956).

Since its inception, however, the litigation privilege has evolved and expanded, with the District of Massachusetts recognizing that it now applies "to civil liability generally." <u>Mack v. Wells Fargo Bank, N.A.</u>, 88 Mass. App. Ct. 664, 667-668 (2015) <u>quoting</u> <u>Bartle v. Berry</u>, 953

N.E.2d 243 (Mass. App. Ct. 2011).   One objective of expanding the privilege has been "to prevent plaintiffs from subverting the purposes of the defamation privilege by bringing actions on other legal theories....Thus, courts have applied the privilege to bar causes of action for, among others, intentional infliction of emotional distress; interference with contractual relationship; fraud; invasion of privacy; abuse of process; and negligent misrepresentation." <u>Simms v. Seaman</u>, 308 Conn. 523, 566-567 (2013).   Another objective of expanding the privilege has been to recognize that the privilege should apply to other acts associated with an attorney's "function as an advocate." <u>Id</u>.   The privilege "is based on the public policy of permitting attorneys complete freedom of expression and candor in communications in their efforts to secure justice for their clients." <u>Mack v. Wells Fargo Bank, N.A.</u>, 88 Mass. App. Ct. 664, 667-668 (2015) (quotation omitted).   As such, Courts weigh whether "the statement is pertinent to the supervening litigation." <u>Riverdale Mills Corp. v. Cavatorta N. Am., Inc.</u>, 189 F. Supp. 3d 317, 321 (D. Mass. 2016).

As noted, Plaintiff brought the 2013 Action alleging unlawful interception and disclosure of the screenshots by the ATC Defendants.   Thus, the screenshots themselves became relevant to both the claims and defenses in that action.   Then, in the course of their advocacy on behalf of the ATC Defendants in that case, the SHS Defendants reasonably introduced the screenshots – the subject of the litigation – into evidence during depositions and in Court pleadings.   Now, Plaintiff is attempting to hold the SHS Defendants liable for violations of state law in connection with the actions they undertook in their capacities as attorneys for the ATC Defendants in 2013. Plaintiff argues that the litigation privilege should not apply, noting that "there is simply nothing in the Rhode Island Court Rules of Professional Conduct that authorizes an attorney to violate the RIWA in carrying out their professional duties."   (ECF Doc. No. 62 at p. 23).   But, after consideration of

the facts and the case law, as well the public policy that encourages attorneys to "zealously advocate" for their clients, the litigation privilege is applicable to the unique circumstances presented in this action. The SHS Defendants' introduction of the screenshots is exactly the type of action that the litigation privilege is intended to apply to, and the public policy protecting attorneys from civil liability when their actions are material, pertinent and relevant to the underlying issues. Accordingly, I recommend that the District Court find that the litigation privilege shields the SHS Defendants from liability in this case, and GRANT Summary Judgment to them as to all claims made against them.

**Conclusion**

For these reasons, I recommend that the District Court GRANT Defendants' Motions for Summary Judgment. (ECF Doc. Nos. 35 and 41).

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

    /s/    Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
June 13, 2018